IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SAINT AUGUSTINE'S UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. |
| THE SOUTHERN ASSOCIATION | ) | |
| OF COLLEGES AND SCHOOLS | ) | |
| COMMISSION ON COLLEGES INC., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF SAINT AUGUSTINE'S UNIVERSITY'S COMPLAINT FOR INJUNCTIVE, MONETARY AND DECLARATORY RELIEF

COMES NOW Saint Augustine's University ("SAU" or the "University"), Plaintiff in the above-styled action, and files this Complaint for Injunctive, Monetary and Declaratory Relief (the "Complaint") against The Southern Association of Colleges and Schools Commission on Colleges, Inc. ("SACSCOC" or the "Defendant"), showing as follows:

### INTRODUCTION

1.

Plaintiff files this action to ensure the survival of SAU, a 158-year-old historically Black college and university ("HBCU") founded by members of the

Episcopal Diocese of North Carolina on a mission to make education accessible to newly freed slaves.  Since its founding in 1867, SAU has served a vital educational and societal role in the local Raleigh, North Carolina community and the broader African American community by providing a transformational educational experience that academically, socially, and spiritually prepares SAU students for leadership in a complex, diverse, and rapidly changing world.

2.

This action is filed to prevent the irreparable harm that will occur if SACSCOC's decision to revoke SAU's accreditation is not reversed.  In deciding to revoke SAU's accreditation, SACSCOC acted arbitrarily, unreasonably, and unlawfully.  The decision was unsupported by the evidence and should be overturned.

3.

If SAU's membership in SACSCOC is not reinstated, SAU will suffer irreparable harm through the loss of federal and other financial aid and resources, loss of private funding and alumni support, student withdrawal, serious damage to the University's reputation, and potential closure.  It is not an overstatement to say that, if SACSCOC's decision is permitted to stand, loss of accreditation will likely result in the demise and dissolution of SAU.

4.

SAU has been continually accredited by SACSCOC (and its predecessor) since 1942. On January 14, 2025, SAU received notice from SACSCOC President, Dr. Belle Wheelan, that the SACSCOC Board of Trustees had voted to remove SAU from membership.

5.

On February 13, 2025, SAU appealed the decision to remove SAU from SACSCOC membership by the Board of Trustees, at which time it provided new and verifiable evidence addressing the January 14, 2025 decision. On March 5, 2025, the Appeals Committee of SACSCOC affirmed the decision of the Board of Trustees, stripping the University of its accredited status.

6.

In doing so, SACSCOC violated its own policies and procedures. SACSCOC has published a document entitled The Appeals Procedures of the College Delegate Assembly ("Appeals Procedures"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit A. The *Appeals Procedures* describe the rights of institutions such as SAU when appealing decisions made by the SACSCOC Board of Trustees, including removal from membership.

7.

The *Appeals Procedures* specifically provide that "an institution removed from accreditation based solely on finances that has available new and verifiable financial information that is material to the Board's adverse decision" may present that evidence to the Appeals Committee  Ex. A at 8.  As the *Appeals Procedures* goes on to state that "[t]he Appeals Committee shall remand to a Committee on Compliance and Reports the case of an institution, removed from accreditation based solely on finances, if it finds that the institution has produced evidence that it has available new and verifiable financial information and that the financial information is material to the Board's adverse decision." *Id.* at 10.

8.

SACSCOC's decision to remove SAU from membership was not based on the quality of SAU's academic programs, nor did it identify any ethical or legal impropriety; rather, the decision was based on its conclusions that SAU's financial challenges rendered it out of compliance with Core Requirement 4.1 (Governing board characteristics), Core Requirement 13.1 (Financial resources), Core Requirement 13.2 (Financial documents), Standard 13.3 (Financial responsibility), Standard 13.4 (Control of finances), 13.5 (Control of sponsored research/external funds), and Standard 13.6 (Federal and state responsibilities) of SACSCOC's Principles of Accreditation:  Foundations for Quality Enhancement ("Principles of

Accreditation" or "Principles") a true and correct copy of which is attached hereto and incorporated herein as Exhibit B.

9.

On appeal, SACSCOC applied the wrong materiality standard when it evaluated whether the additional evidence presented by SAU, which SACSCOC has conceded is new and verifiable, was material to the Board of Trustee's decision to remove SAU from membership.

10.

SACSCOC's failures were further compounded when SAU was forced to litigate its case in an arbitration process which did not provide it with proper due process protections. SACSCOC has published a document entitled Arbitration of Adverse Actions Policy Statement ("Arbitration Policy"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit C. The Arbitration Policy purports to require that all members of SACSCOC consent to binding arbitration as a condition of membership. Ex. C at 1. The arbitration itself must take place in front of a panel of arbitrators selected only from a roster of arbitrators handpicked by SACSCOC. *Id.* at 2. The Arbitration Policy deprives institutions of due process by providing that "[t]here shall be no discovery in the arbitration proceeding" and that "[t]here shall not be any additional evidence submitted to the

arbitrators beyond the Record on Review." *Id.* at 5.  Parties to the arbitration are limited in who can present their case to the panel, and are restricted to "[n]o more than six (6) persons and one attorney of counsel." *Id.*  Put simply, the strict limits imposed on SAU by the Arbitration Policy did not provide SAU with a meaningful opportunity to defend itself from the decision to remove it from SACSCOC membership, and was a violation of SAU's due process rights.

11.

In failing to remand SAU's accreditation decision and in imposing an unfair arbitration process designed to rubberstamp SACSCOC's prior decision, SACSCOC has violated its own policies and procedures, and fundamental due process.  In short, SACSCOC ignored key evidence supporting a remand of SAU's accreditation back to a Committee on Compliance and Reports, denied SAU the opportunity to meaningfully litigate its case during the arbitration, and arbitrarily decided to revoke SAU's accreditation.

**PARTIES**

12.

Saint Augustine's University was founded in 1867 by the Episcopal Diocese of North Carolina.  SAU is a private, four-year historically Black liberal arts university located in Raleigh, North Carolina.  It is incorporated and has its principal

place of business in North Carolina.  The University receives both governmental and private funding and is a member of the United Negro College Fund.

13.

Defendant Southern Association of Colleges and Schools Commission on Colleges, Inc. ("SACSCOC" or the "Association") is a nonprofit corporation incorporated under the laws of the State of Georgia, with its principal place of business located in Decatur, Georgia, within this judicial district. SACSCOC is an accrediting agency recognized by the Secretary of the United States Department of Education (hereinafter "Secretary of Education") for the purpose of bestowing institution-wide accreditation on institutions of higher education.  An institution's eligibility to receive federal funding—including federal financial aid for its students—is contingent upon an institution's membership in a recognized accrediting agency like SACSCOC. 20 U.S.C. § 1001 *et seq.*

## JURISDICTION AND VENUE

14.

This Court has jurisdiction over the subject matter of this action under the following statutory provisions: (1) 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, including but not limited to the Due Process Clause of the Fifth Amendment to the United States Constitution; (2) 20

U.S.C. § 1099b(f), providing exclusive federal jurisdiction for disputes with recognized accrediting agencies; and (3) 28 U.S.C. § 1332 in that there is complete diversity of citizenship between SAU and the Defendant and the amount in controversy between the University and the Defendant exceeds $75,000, exclusive of interest and costs. This Court may issue declaratory relief pursuant to 28 U.S.C. § 2201(A).

15.

This Court has jurisdiction over the person of the Defendant.

16.

Venue for this action lies in this judicial district and division under 28 U.S.C. § 1391(b) because the Defendant resides in this judicial district.

**GENERAL ALLEGATIONS**

**A.    History of Saint Augustine's University**

17.

SAU was founded in 1867 by the Episcopal Diocese of North Carolina and is one of the oldest HBCUs in the country. Like many HBCUs, SAU was founded to make education accessible to newly freed slaves, as they were barred from attending predominantly white institutions.

18.

Since its inception more than 157 years ago, SAU has provided an exceptional learning environment that, in keeping with SAU's mission, prepares students academically, socially, and spiritually for leadership in a complex, diverse, and rapidly changing world. SAU has blazed important trails in higher education and beyond. For example, SAU established St. Agnes Hospital and Training School for Nurses, which was the first school of nursing in North Carolina for African Americans and served as the only hospital that served African Americans until 1960. The University was also the first HBCU in the nation to own an on-campus commercial radio station and television station.

19.

The University currently offers more than 20 undergraduate degree programs, has had a historical enrollment of approximately 1,000 students in the years leading up to SACSCOC's decision to revoke SAU's membership, and has an extensive network of alumni across the globe.

20.

In 2024, 97 percent of SAU's students received grants of scholarship aid, 72 percent received Pell Grants, and 87 percent received Federal student loans.

**B.**    **Accreditation History**

21.

SACSCOC is an accrediting institution that provides accreditation for colleges and universities predominately in Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia, that award associate, baccalaureate, master's, or doctoral degrees.

22.

All institutions accredited by SACSCOC are required to undergo a review for reaffirmation of accreditation every ten years. To have its accreditation reaffirmed, an institution must be in compliance with the Association's *Principles of Accreditation*.

23.

Because an institution's eligibility to receive federal funding is contingent upon the university's continued membership in an accreditation association, a loss of accreditation would jeopardize the financial aid of at least 87 percent of SAU's student population.

24.

For more than 80 years—since 1942—SAU has been fully accredited by SACSCOC (and its predecessor).

25.

Between 2019 and 2021, SAU faced a unique set of circumstances which resulted in a period of leadership transition.  Unfortunately, those changes in executive leadership translated to instability in the oversight of the University's fiscal affairs.

26.

Upon the retirement of a successful, long-serving president in 2019, the University had two short-term interim CEOs before SAU selected Dr. Irving Johnson McPhail as its new permanent president following a national search.

C.    **SACSCOC Action Letter and SAU's Monitoring Report I**

27.

In the midst of Dr. Irving McPhail's short tenure, on or about September 18, 2020, SAU received a letter from SACSCOC notifying SAU that it was being placed on Warning.  The letter noted that SACSCOC's decision to place the university on Warning was due to alleged past non-compliance with several of the *Principles of Accreditation* Core Requirements and Standards.  In response to the Warning letter, SAU was required to submit a Monitoring Report addressing these standards and detailing corrective actions that the University had taken to comply with the identified standards.

28.

Less than a week after the SACSCOC Letter arrived, President Irving McPhail was hospitalized with a severe case of COVID-19. Tragically, he passed away within three weeks of being hospitalized. Within a month of receiving the Warning letter, SAU found itself again without a president.

29.

The next six months saw two interim presidents leading SAU into 2021. Dr. Christine Johnson McPhail was ultimately selected to succeed her late husband as the University's new president and, upon taking office, she inherited the monumental responsibility of preparing SAU's first Monitoring Report—which was due shortly after her installation as president in February 2021.

30.

SAU submitted its First Monitoring Report on March 14, 2021. In its report, SAU detailed the positive improvements that had already been implemented and the steps the University would take to comply with SACSCOC's standards, and it reiterated the University's commitment to remedy past shortcomings quickly and fully under the new leadership of Dr. Christine McPhail.

31.

SAU also submitted a Focus Response to SACSCOC's Special Committee Report that demonstrated strong financial resources, documents, and responsibility

through evidence showing its progressive administrative decisions, responsible management of resources, focus on infrastructure improvement over debt repayment, and new professional agreements for audit and support services.

32.

Board governance was further enhanced through new and improved Board training and development, and a special subcommittee that was appointed to conduct self-evaluations to strengthen the Board's governance structure.

**D.     SACSCOC's Second Action Letter and SAU's Monitoring Report II**

33.

On July 1, 2021, SAU received another action letter from SACSCOC informing SAU that it would continue to be on "Warning" due to failure to comply with five Core Requirements and Standards.  In response, SAU was required to submit a Second Monitoring Report.

34.

On March 30, 2022, SAU submitted its Second Monitoring Report, focusing on the progress SAU had made in complying with SACSCOC's standards.  The report noted significant efforts by the University to address and rectify the compliance issues identified in SACSCOC's earlier assessments, particularly in areas of financial management and institutional responsibility.

35.

Specifically, SAU demonstrated financial stability by showing that its assets remained stable from 2018-2021, pointing to an increase in enrollment that increased tuition and fees revenue by approximately $2 million, and noting millions of dollars of COVID-era emergency funding and federal loan forgiveness that SAU had received.

36.

SAU also submitted a report to SACSCOC in May 2023 highlighting key improvements to SAU's financial stability and health, such as:

- Changes in audit firms and financial systems to address material weaknesses;
- Restructuring of the finance and financial aid departments;
- Implementation of new systems and training to enhance financial reporting and oversight; and
- Increased enrollment, grant activity, and fundraising.

**E.    SACSCOC's Third Action Letter and SAU's Monitoring Report III**

37.

On June 30, 2022, SACSCOC sent SAU a letter informing the University that it would remain on Warning.

38.

SAU submitted its Third Monitoring report addressing SACSCOC's compliance concerns on October 31, 2022.   The report specifically addressed

compliance with Core Requirement 13.1 (Financial resources), Core Requirement 13.2 (Financial documents), Standard 13.3 (Financial responsibility), Standard 13.4 (Control of finances), and Standard 13.6 (Federal and state responsibilities), and outlined the University's improvements in financial management and control, restructuring of administrative divisions, implementation of new financial systems, and strategies for increasing revenue and enrollment.

**F.    SAU's Probation for Good Cause**

39.

On December 4, 2022, SACSCOC's Board of Trustees reviewed SAU's Third Monitoring Report and recommended SAU be placed on Probation for Good Cause for twelve months, adding a sixth SACSCOC Core Requirement (4.1, Governing board characteristics) for SAU to address.  Put differently, based on SAU's financial and general wellbeing in 2022 (which was worse than in 2023), SACSCOC determined SAU was worthy of continuation of its accreditation on Probation for Good Cause.

40.

On January 11, 2023, SAU received a letter from SACSCOC informing the University that it was being placed on Probation for Good Cause.  The 12-month probationary period could be extended for a second year upon a showing of Good

Cause. As part of its probation, SAU was required to submit a Fourth Monitoring Report addressing its compliance with six SACSCOC core requirements and standards: Core Requirement 4.1 (Governing board characteristics), Core Requirement 13.1 (Financial resources), Core Requirement 13.2 (Financial documents), Standard 13.3 (Financial responsibility), Standard 13.4 (Control of finances), and Standard 13.6 (Federal and state responsibilities).

41.

In the January 11, 2023 letter, SACSCOC's explanations of its findings for each core requirement and standard focused SAU's financial audit reports and the requested audited financial statements for FY 2021 and FY 2022, noting that "without the requested audited financial statements," SACSCOC could not resolve issues.

42.

SAU submitted its Fourth Monitoring Report on September 12, 2023, detailing the University's significant efforts to comply with SACSCOC's core requirements and standards and articulating the steps SAU had taken to address the accreditor's recommendations and concerns. Within the report, SAU detailed the multiple initiatives aimed at bolstering financial oversight and strategic planning, as well as changes to SAU's governance like enhanced Board engagement, new Board

members, and Board training on fiduciary duties and responsibility for SAU's long-term sustainability.  The report also highlighted stable enrollment, efforts to broaden and diversify SAU's revenue streams, the University's new financial reporting systems, and compliance with federal and state regulations.

43.

On October 10 and 11, 2023, SACSCOC conducted its Special Committee Site Visit and, following that visit, issued its Special Committee Report.  The report emphasized SAU's need to demonstrate effective financial stability, transparent governance, and adherence to legal and regulatory standards.

44.

On November 13, 2023, SAU issued its Response to the Final Report of the Special Committee, outlining the University's ongoing efforts toward improvement and compliance.  The Response included a Statement of Good Cause outlining the University's compliance with the three provisions required to support a second year on Probation for Good Cause.

45.

On December 1, 2023, SAU representatives met with the SACSCOC Committee on Compliance and Reports ("C&R Committee"), Group C.  During this meeting, SAU highlighted the University's significant accomplishments and its

progress toward complying with SACSCOC's core requirements and standards. Throughout 2023, SAU had substantially improved its financial health and governance since being placed on Probation in January 2023.

46.

On January 11, 2024, SACSCOC informed Dr. Marcus Burgess, the newly installed Interim President of SAU, that the SACSCOC Board of Trustees had voted to remove SAU from membership.

47.

This decision to remove an institution from membership effectively strips an institution of its accreditation, effective the date of the Board's decision.

**G.    SAU's First Appeal of SACSCOC's Decision**

48.

On January 18, 2024, SAU formally served its notice of appeal of the SACSCOC Board's decision to remove SAU from membership as an accredited institution.

49.

SACSOC's Appellate Procedures provide grounds for an appeal when a SACSCOC Board "decision was arbitrary, that is, was unreasonable and not based on, or consistent with, the published *Principles of Accreditation* or policies of

- 18 -

SACSCOC."  In cases, like SAU's, where "an institution has been removed from accreditation based solely on finances, it can make available to the Appeals Committee new and verifiable financial information that is material to the Board's adverse decision."

50.

SAU argued that SACSCOC's decision to remove SAU from membership was based on finances because all of the core requirements and standards were financial and, in the case of Core Requirement 4.1 (Governing board characteristics), SACSCOC's decision was financially related and based on the Board's prior failings in financial oversight.  Thus, SAU argued that it should be allowed to present "available new and verifiable financial information" to support its compliance arguments on appeal.

51.

Notably, SAU intended to present new and verifiable financial information on the now-completed FY 2021 audit and the FY 2022 audit, which were material to the Board's adverse decision and the core of SACSCOC's compliance issues.

52.

Following SAU's notice of appeal, SAU and SACSCOC's attorney submitted letters to the SACSCOC Appeals Committee Hearing Officer articulating their

respective arguments about whether "available new and verifiable financial information" should be allowed.

53.

On February 2, 2024, SAU received a letter from the Appeals Committee Hearing Officer issuing a ruling that the University would not be allowed to present any new and verifiable financial documents or information.

54.

On February 20, 2024, the SACSCOC Appeals Committee heard SAU's appeal of the Board's decision. SAU argued that SACSCOC acted arbitrarily and unreasonably when it declined to extend SAU's Probation for another year—despite the evidence and testimony from SAU establishing a case for a Good Cause extension. Because SAU met the Good Cause provisions outlined by SACSCOC policy, SACSCOC should have granted SAU a Probation for Good Cause extension until December 2024. In light of the evidence SAU submitted through its Monitoring Reports and testimony to the C&R Committee, SACSCOC's decision to remove SAU from membership was arbitrary, unreasonable, and fundamentally unfair because the decision was unsupported by the evidence.

55.

On February 27, 2024, SACSCOC notified SAU that the Appeals Committee affirmed the decision of the Board of Trustees to remove SAU from membership in SACSCOC despite the overwhelming evidence that SAU was entitled to another year of Probation for Good Cause.

**H.      SAU's First Arbitration of SACSCOC's Decision**

56.

On March 8, 2024, SAU formally submitted a Notice of Arbitration and deposit to SACSCOC regarding the February 27, 2024 Appeals Committee decision. This request for arbitration was acknowledged by SACSCOC by letter on March 20, 2024.

57.

On June 26, 2024, SAU participated in an arbitration hearing with SACSCOC on June 26, 2024.  Following that hearing, SAU was informed on July 19, 2024 that the SACSCOC arbitration panel had unanimously decided to reverse the February 27, 2025 Appeals Committee decision based on the Committee's failure to allow SAU to present new financial evidence as provided for in the *Appeals Procedures*.

**I.      SACSCOC's Removal of SAU from Membership**

58.

On August 13, 2024, SACSCOC sent SAU a letter requesting that SAU submit a Fifth Monitoring report. On that same day, SACSCOC sent a second letter to SAU providing it an opportunity to respond to concerns raised by media coverage and SAU's accreditation proceedings and related financial condition.

59.

SAU submitted its Fifth Monitoring report addressing SACSCOC's compliance concerns on September 10, 2024. The report specifically addressed compliance with Core Requirement 13.1 (Financial resources), Core Requirement 13.2 (Financial documents), Standard 13.3 (Financial responsibility), Standard 13.4 (Control of finances), and Standard 13.6 (Federal and state responsibilities), and outlined the University's significant progress and demonstrated commitment to meeting all compliance requirements.

60.

On October 8 through 10, 2024, SACSCOC conducted its Special Committee Site Visit and, following that visit, issued its Special Committee Report. The report emphasized SAU's need for sound financial management and transparent governance structures.

61.

On November 18, 2024, SAU issued its Response to the Final Report of the Special Committee, outlining the University's efforts to address concerns related to governance, financial resources, financial responsibility, control of finances, sponsored research, and federal and state responsibilities.

62.

On December 7, 2024, SAU representatives met with the SACSCOC Committee on Compliance and Reports ("C&R Committee"), Group C. During this meeting, SAU highlighted the University's significant accomplishments and its progress toward complying with SACSCOC's core requirements and standards. Throughout 2024, SAU had substantially improved its financial health and governance.

63.

On January 14, 2025, SACSCOC informed Dr. Burgess, that the SACSCOC Board of Trustees had voted to remove SAU from membership, effectively stripping SAU of its accreditation.

## J.    SAU's Second Appeal of SACSCOC's Decision

64.

On February 13, 2025, SAU formally served its notice of appeal of the SACSCOC Board's decision to remove SAU from membership as an accredited

institution.  As part of that appeal, SAU submitted new and verifiable financial information that was material to the SACSCOC Board of Trustees decision to remove SAU from membership.

65.

This new and verifiable evidence included the following:  (1) training materials demonstrating that the SAU Board of Trustees had undergone training with an emphasis on the responsibilities of fiduciary oversight; (2) engagement agreement with an independent internal auditor to assist SAU with addressing audit findings, implementing internal controls, and ongoing training of new and current staff; (3) Board minutes demonstrating the SAU's Board of Trustees continued to exercise oversight of SAU's financial condition; (4) charter for the newly established Internal Audit department; (5) Letter of Intent documenting a $70,000,000 funding commitment to improve the financial condition of SAU; (6) documentation of how the funding commitment would be used to eliminate existing debt, rebuild SAU's endowment, invest in infrastructure, and fund continuing operations; (7) documents demonstrating SAU's continued progress in reducing personnel and salary costs; (8) an Independent Auditor's Report for Fiscal Year 2024; and (9) a Schedule of Findings and Questioned Costs for Fiscal Year 2023.

66.

Each of these documents spoke directly to deficiencies identified in the Committee on Compliance and Reports findings that were relied on by the Board of Trustees in removing SAU from membership and were material to that decision.

67.

On February 27, 2025, the SACSCOC Appeals Committee heard SAU's appeal of the Board's decision. SAU argued that the new and verifiable financial information that SAU presented to the Appeals Committee demonstrated the school's compliance with the relevant core requirements and standards. In particular, the funding commitment and planned land developments provided tangible evidence of the school's ability to effectively monetize SAU's excess real estate holdings and place SAU on sound financial footing, remedying the concerns that formed the basis for the decision to remove SAU from SACSCOC membership.

68.

On March 5, 2025, SACSCOC notified SAU that the Appeals Committee affirmed the decision of the Board of Trustees to remove SAU from membership in SACSCOC, despite the fact that SAU had provided new and verifiable financial information that was material to that decision.

**K.    SAU's Second Arbitration of SACSCOC's Decision**

69.

On March 13, 2025, SAU formally submitted a Notice of Arbitration and deposit to SACSCOC regarding the March 5, 2024 Appeals Committee decision. This request for arbitration was acknowledged by SACSCOC by letter on March 17, 2025.

70.

As part of the arbitration hearing, SAU was not permitted to take any discovery related to SACSCOC's decision to remove it from membership.  Further, SAU was restricted in who was allowed to present its case, as it was limited to one attorney, and six representatives from the school.

71.

These limitations deprived SAU of its ability to meaningfully defend itself from SACSCOC's incorrect decision to remove it from membership and strip it of accreditation.

72.

On June 26, 2025, SAU participated in an arbitration hearing with SACSCOC. Following that hearing, SAU was informed on July 10, 2025 that the SACSCOC

arbitration panel had upheld the March 5, 2025 Appeals Committee decision and removed SAU from SACSCOC membership.

## Count I

### SACSCOC's Appeals Committee Violated SAU's Due Process By Failing To Remand The Removal of SAU from SACSCOC Membership Upon The Presentation Of New And Verifiable Financial Information Material To The Removal Decision

73.

SAU incorporates the allegations set forth in paragraphs 1-72 above as if set forth fully herein.

74.

As an accrediting body recognized by the Secretary of Education, SACSCOC "must demonstrate that the procedures it uses throughout the accrediting process satisfy due process." 34 C.F.R. § 602.25.

75.

The Higher Education Act also requires SACSCOC to "establish and apply review procedures throughout the accrediting process, including evaluation and withdrawal proceedings, which comply with due process" and, in accordance with that due process, to "provide for adequate written specification of requirements,

including clear standards for an institution of higher education or program to be accredited."  20 U.S.C. § 1099b(a)(6).

76.

It is widely recognized that "quasi-public" professional organizations and accrediting agencies have a common law duty to employ fair policies and procedures when making decisions affecting their members. When determining if there is a common law due process violation, courts consider whether the accrediting agency's decision was "arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Paine Coll. v. S. Ass'n of Colls. & Sch. Comm'n on Coll.*, 342 F. Supp. 3d 1321, 1338 (N.D. Ga. Oct. 12, 2018).

77.

"The essential elements of due process are notice, an opportunity to respond, and an open and fair deliberative process."  *Id.* at 1334.  It is well-established that the application and degree of due process varies "as the factual situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976).

78.

In considering the application of due process to each case, the court must consider: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used,

and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Id*. at 335.

79.

Given SACSCOC's status as a quasi-public organization and recognizing the importance of accreditation to SACSCOC member institutions and the value of additional safeguards and government interest in educating students, there can be no doubt that SAU was entitled to meaningful due process.

80.

The decision to strip SAU of its accreditation should be overturned if SACSCOC was unable or unwilling to provide meaningful due process to SAU.

81.

An accrediting association's decision to strip a member of accreditation may be overturned if it is arbitrary and unreasonable or is not supported by substantial evidence in the record.

82.

The record clearly established that SAU presented new and verifiable financial information that was material to the SACSCOC Board of Trustees decision to remove SAU from membership. Instead, SACSCOC acted arbitrarily and unreasonably decided to strip SAU of its accreditation.

- 29 -

83.

SAU provided 10 documents that constituted new and verifiable financial information that demonstrated SAU was in compliance with relevant standards. SACSCOC, however, failed to properly or fairly consider that evidence.

84.

In affirming that SAU be removed from membership in SACSCOC, the Appeals Committee disregarded substantial and relevant evidence.

85.

The Appeals Committee failed to properly apply SACSCOC's *Appeals Procedures* and the *Principles of Accreditation* to SAU's governance and financial condition. The *Appeals Procedures* require that SAU's removal from membership be remanded if SAU presented new and verifiable financial information that was material to that removal decision. Despite the fact that the new evidence presented by SAU directly addressed the concerns upon which the removal decision was based, the Appeals Committee failed to remand the removal decision in violation of the *Appeals Procedures*.

86.

SAU has incurred and will continue to incur substantial damages, including loss of future funding, damage to reputation, loss of good will, and the potential

dissolution of the entire institution due to SACSCOC's arbitrary and unreasonable decision.

87.

SAU has been irreparably harmed by SACSCOC's arbitrary and unreasonable decision to revoke SAU's accreditation.  Therefore, SAU is entitled to declaratory and injunctive relief.

## Count II

## SACSCOC Violated SAU's Due Process by Failing to Provide SAU With A Meaningful Opportunity To Defend Its Interests

88.

SAU incorporates the allegations set forth in paragraphs 1-72 above as if set forth fully herein.

89.

SACSCOC's Arbitration Policy did not provide SAU with a neutral forum or fair procedures with which to defend its rightful membership in SACSCOC and accompanying accreditation.

90.

SACSCOC's Arbitration Policy requires that all arbitrators be selected from a roster of arbitrators chosen and maintained by SACSCOC itself. Ex. C at 2. These provisions did not allow SAU to have a fair hearing in front of a neutral panel.

91.

SACSCOC's Arbitration Policy further restricted SAU's ability to develop evidence necessary for it to meaningfully defend its rights. The Arbitration Policy states that "[t]here shall be no discovery in the arbitration proceeding," and that "[t]here shall not be any additional evidence submitted to the arbitrators beyond the Record on Review."

92.

The Arbitration Policy further restricted how SAU presented its case in the arbitration by providing that "[n]o more than six (6) persons and one attorney of counsel may appear for each of the parties." This provision improperly restricted the witnesses who SAU could call upon to present its case, as well as improperly restricted its right to counsel.

93.

SAU has incurred and will continue to incur substantial damages, including loss of future funding, damage to reputation, loss of good will, and the potential

dissolution of the entire institution due to SACSCOC's failure to provide a proper forum for SAU to defend its interests.

## PRAYER FOR RELIEF

WHEREFORE SAU asks for judgment:

(1)    declaring that SACSCOC failed to follow its own rules and policies in reaching its decision to strip SAU of its accreditation, and that the decision to revoke the University's accreditation is therefore null and void;

(2)    declaring that SACSCOC violated SAU's due process rights in reaching its decision to strip the University of its accreditation, and that the decision is therefore null and void;

(3)    declaring that SACSCOC's decision to strip SAU of its accreditation was arbitrary and unreasonable, and not supported by the record, and that the decision is therefore null and void;

(4)    declaring that SACSCOC violated HEA in reaching its decision to strip SAU of its accreditation, and that the decision is therefore null and void;

(5)    issuing a preliminary and permanent injunction supplemental to the above declarations: (a) enjoining SACSCOC from notifying the Secretary of Education of its decision to strip SAU of its accreditation; (b) restoring the accreditation of SAU; and (c) continuing the reaffirmation process in a manner

consistent with SACSCOC's rules and policies, and providing the University with its due process rights;

(6)    awarding SAU damages in an amount to be determined at trial;

(7)    awarding SAU attorney's fees and other expenses of litigation;

(8)    granting SAU a jury trial as to all issues triable; and

(9)    granting such other and further relief as the Court deems just and equitable.

Respectfully submitted this 14th day of August, 2025.

*Derin B. Dickerson*
Derin B. Dickerson
Georgia Bar No. 220620
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
derin.dickerson@alston.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed **PLAINTIFF SAINT AUGUSTINE'S UNIVERSITY'S COMPLAINT FOR INJUNCTIVE, MONETARY, AND DECLARATOY RELIEF** using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record. I have also served the foregoing filing via U.S. mail to counsel at the address below:

Patrick W. McKee, Esq.
Law Office of Patrick W. McKee, LLC
19 Spring Street Newnan, Georgia 30263

This 14th day of August, 2025.

*/s/ Derin B. Dickerson*
Derin B. Dickerson
